[No. B012207. Second Dist., Div. Two. Nov. 21, 1986.]

FRANCIS DOMINIC FREDETTE, Plaintiff and Appellant, v.
CITY OF LONG BEACH, Defendant and Respondent.

**COUNSEL**

Burns, Palumbo, Milam & Baronian and Bruce Palumbo for Plaintiff and Appellant.

John R. Calhoun, City Attorney, and Robert E. Shannon, Assistant City Attorney, for Defendant and Respondent.

**OPINION**

**COMPTON, Acting P. J.**—Plaintiff Francis Dominic Fredette instituted this action to recover damages for personal injuries sustained by him after diving from a pier into the Colorado Lagoon, a recreational facility owned, operated, and maintained by defendants City of Long Beach (City) et al. The case proceeded to trial on the theory that plaintiff's injuries were

proximately caused by a dangerous condition of public property. (Gov. Code, §§ 830, 830.5.) The jury returned a special verdict in favor of the City, and this appeal follows. We affirm.

Although plaintiff's attack upon the verdict is couched in a variety of terms, he primarily contends that the evidence is insufficient to support the judgment and that the trial court improperly instructed the jury on the applicable law.

■ Our review of the evidence is governed, of course, by the familiar rule that all conflicts must be resolved in favor of the prevailing party and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. The power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or not, which will support the conclusion reached by the trier of fact. ■ It is the province of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses. The jury therefore may accept part of the testimony of a witness and reject another part. (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67 [107 Cal.Rptr. 45, 507 P.2d 653]; *Gray* v. *Southern Pacific Co.* (1944) 23 Cal.2d 632, 641 [145 P.2d 561].) ■ When two or more inferences can be reasonably drawn from the facts, the reviewing court is without power to substitute its deductions for those of the jury. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Moreno* v. *Sayre* (1984) 162 Cal.App.3d 116, 121 [208 Cal.Rptr. 444].)

Bearing in mind these well-established principles, we begin our review by setting forth the evidence adduced at trial in the light most favorable to the judgment.

Bordered by a small sandy beach, Colorado Lagoon is a seawater recreational facility consisting of two piers and adjacent floats that has been open to the general public since its construction nearly 60 years ago. By 1978, however, both piers had deteriorated and the City, in an attempt to revitalize the area, undertook the task of rebuilding the structures. The subject pier, approximately forty feet in length, four feet in width, and rising some five to seven feet above water level, provided access to a gangway which in turn was linked to a float used by swimmers as a diving platform.

Beginning in April 1978, the pier was dismantled and the gangway removed. During the next four months, the concrete pilings supporting the structure were enlarged, the horizontal decking was rebuilt, and new railings were installed. As the work progressed, A-frame barricades were occa-

sionally placed at the foot of the stairs leading to the pier for the purpose of dissuading the public from entering the construction site. The lagoon itself, however, remained accessible and was neither fenced nor otherwise enclosed. Although lifeguards were on duty between the hours of 8 a.m. and 8:30 p.m., and had been instructed to prevent swimmers from using the pier as a diving platform, the area was open until 11:30 p.m.[1] The only warning sign in the immediate vicinity of the pier was positioned on the float and, in bold letters, admonished users of the facility that both fishing and diving from the "rails" were prohibited.

By July 27, 1978, work on the structure had been substantially completed except for the installation of the gangplank leading to the float. All barricades had been removed and that portion of the pier extending out over the water remained open-ended.

Plaintiff, a resident of Long Beach, was familiar with the lagoon and the construction project, having used the facilities on more than 75 different occasions over a 2-year period. On the evening of July 28, 1978, plaintiff and several family friends, including one James Collins, were celebrating the birthday of plaintiff's wife, Jeannette, at the couple's home. During the course of the celebration, plaintiff consumed approximately four to six 12-ounce cans of beer; Collins, between four and five cans.[2] At the suggestion of plaintiff's wife, several of the couples decided to leave the party and drive to the lagoon. Arriving at that location sometime between 12:30 a.m. and 1:30 a.m., plaintiff and Collins walked out to the end of the pier while their wives remained on the beach. Neither plaintiff nor any other member of the group noticed warning signs or barricades that would have prohibited or prevented use of the pier and adjacent facilities. As the men approached the open-ended portion of the pier, they removed their clothes and prepared to dive into the water. Although the area was well-lit, neither of the men noticed the depth of the water immediately beneath the structure.

Collins, diving from the left side of the pier, entered the water first, hit the bottom of the lagoon unscathed, and surfaced. Seeing that plaintiff was about to make his dive, Collins attempted to alert him to the shallowness of the water. Plaintiff, however, already had begun his dive and apparently did not hear the warning. From a crouching position, plaintiff executed a flat, right-angled dive in order to avoid hitting bottom or colliding with the float, located approximately 22 feet from the end of the pier. The force of the dive itself propelled him some 20 feet into the water where he struck

---

[1] The hours of operation were posted on a sign located some distance from the pier.

[2] At trial, plaintiff testified that although he was not intoxicated, he did feel the effect of the alcohol. Medical records introduced into evidence reveal that at least one doctor who examined plaintiff immediately after the accident believed him to be intoxicated.

either the ocean floor or some unknown solid object. The impact was sufficient enough to render plaintiff, a former college football player and wrestler, a quadriplegic at the age of 22.[3]

At trial, plaintiff testified that although he was familiar with the configuration of the lagoon, he would not have made the dive had the pier been barricaded or had there been signs warning against the use of the structure as a diving platform. He did admit, however, that at no previous time had he observed swimmers diving from the pier and that he had never attempted to do so himself. Accident reconstruction experts, contractors employed by the City, and lifeguards who regularly patrolled the area, estimated the depth of the water at the time of the accident at anywhere between four and six feet. On the day following the mishap, a paramedic who had been called to the scene to render aid to plaintiff, returned to the lagoon and inspected the pier and surrounding area. He found that the structure was intact and that all construction work had been completed except for the reinstallation of the gangplank. He further observed that the water between the pier and float was free from debris. In response to questioning by the defense, the paramedic opined, over plaintiff's objection, that diving from the pier was a hazardous and unsafe activity.

Following trial, the jury returned a special verdict finding, by a vote of nine to three, that Colorado Lagoon was not in a dangerous condition on the date of plaintiff's accident.

Before proceeding to a discussion of plaintiff's contentions on appeal, we initially note that there was no evidence adduced at trial tending to establish that the plan or design of the pier in any way created a dangerous condition. Rather, the question of the existence of a dangerous condition centered on the absence of barricades or warning signs at the accident site. Plaintiff argues, of course, that the City's failure to take such protective measures was the proximate cause of his injuries.

■ It is without dispute that a governmental body is not liable for any injury, whether it arises out of an act or omission of the public entity or a public employee or any other person, except as otherwise provided by statute. (Gov. Code, § 815, subd. (a); *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Branch* v. *State of California* ex rel. *Dept. of Transportation* (1984) 159 Cal.App.3d 340, 343 [205 Cal.Rptr. 482]; *Swaner* v. *City of Santa Monica* (1984) 150 Cal.App.3d 789, 797-798 [198 Cal.Rptr. 208].) Under the Tort Claims Act of 1963 (Gov. Code,

---

[3]As a result of intensive physical rehabilitation, plaintiff, by the time of trial, had regained use of his arms and legs and was employed as a high school physical education teacher.

§§ 830-840.6), liability is imposed for injury resulting from the public entity's creation, or its failure to warn of a "dangerous condition" on or near its property. A plaintiff must therefore prove by a preponderance of evidence that his injuries were "proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." (Gov. Code, § 835; *Harland v. State of California* (1977) 75 Cal.App.3d 475, 483 [142 Cal.Rptr. 201].)[4]

■ "Dangerous condition" is statutorily defined as a "condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is *used with due care* in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a).) Thus, to sufficiently prove a "dangerous condition" within the meaning of section 830, a plaintiff must establish that the condition of the public property created a substantial risk of injury when "used with due care" in a foreseeable manner.[5]

■ It is well settled, however, that the negligence or lack of due care exhibited by a plaintiff-user of public property does not necessarily defeat his cause of action. The Law Revision Commission's comment to section 830 provides: "Although the condition will not be considered dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property *with due care,* [italics in original] this does not require that the injured person prove that he was free from contributory negligence. Contributory negligence is a matter of defense under subdivision (b) of Section 815. The plaintiff is, however, required to establish that the condition was one that *created a hazard to a person who foreseeably would use the property or adjacent property with due care."* (Italics added.)

---

[4]Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[5]"The condition of the property involved should create a 'substantial risk' of injury, for an undue burden would be placed upon public entities if they were responsible for the repair of all conditions creating any possibility of injury however remote that possibility might be." (Recommendation Relating to Sovereign Immunity, 4 Cal. Law Revision Com. Rep. (1963) p. 822.) Citing the above passage, Professor Van Alstyne comments: "The Legislature was apparently concerned not with the extent of injury, but with the *probability* that an injury would occur." (Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) p. 191, italics added.)

The negligence of a plaintiff-user of public property, therefore, is a defense which may be asserted by a public entity; it has no bearing upon the determination of a "dangerous condition" in the first instance. (See *Callahan* v. *City and County of San Francisco* (1967) 249 Cal.App.2d 696, 702-703 [57 Cal.Rptr. 639]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.12, pp. 198-201.) So long as a plaintiff-user can establish that a condition of the property creates a substantial risk to *any* foreseeable user of the public property who uses it with due care, he has successfully alleged the existence of a dangerous condition regardless of his personal lack of due care. If, however, it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of section 830, subdivision (a). (See *Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 939-940 [125 Cal.Rptr. 586].)[6]

Applying the foregoing principles to the case at bench, we can only conclude that substantial evidence supports the jury's finding that there was no dangerous condition of public property and that the City's failure to erect barricades or post warning signs was not the proximate cause of plaintiff's injuries.

The manifest intent of the Tort Claims Act is to impose liability only when there is a substantial danger which is *not* apparent to those using the property in a reasonably foreseeable manner with due care. (*Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855]; *McKray* v. *State of California* (1977) 74 Cal.App.3d 59 [141 Cal.Rptr. 280].) Although a public entity's liability under section 835 may be predicated upon a failure to provide adequate safeguards against a dangerous condition of which the entity had actual or constructive notice (*Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 715-718 [159 Cal.Rptr. 835, 602 P.2d 755]), that rule has no application here. Cases holding public entities liable for failure to warn of dangerous conditions are based on the presence of an actual dangerous physical defect or an otherwise dangerous condition

---

[6]At this juncture, we note that when sections 830 and 835 were enacted, the doctrine of contributory negligence acted as a complete bar to a plaintiff's cause of action. Consequently, even though proof of a plaintiff's negligence did not negate the existence of a dangerous condition, it still had the effect of absolving a public entity from liability for failing to take steps to protect a plaintiff whose own negligence contributed to his injuries.

With the pronouncement of the doctrine of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226], and its application to government tort liability (see *Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481 [137 Cal.Rptr. 512]), such proof would not necessarily exonerate a public entity from all liability. Instead, it might serve only to reduce the public entity's liability exposure in proportion to the negligence of the plaintiff. (See *Swaner* v. *City of Santa Monica, supra,* 150 Cal.App.3d at p. 799, fn. 4.)

which was not apparent to persons using the property with due care. (See, e.g., *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484 [135 Cal.Rptr. 296]; *Quelvog* v. *City of Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127].) In all such cases, the inability of any user to see or appreciate the danger remained a constant feature of the property whether used by careless or careful persons. (E.g., *Cameron* v. *State of California* (1972) 7 Cal.3d 318 [102 Cal.Rptr. 305, 497 P.2d 777], a deceptive S-curve with unexpected and abrupt superelevation; *Baldwin* v. *State of California* (1972) 6 Cal.3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121], danger of a rear-end collision while waiting in a left-turn lane; *Anderson* v. *City of Thousand Oaks* (1976) 65 Cal.App.3d 82 [135 Cal.Rptr. 127], a deceptively sharp curve with unexpected change in superelevation.)

Based upon our review of the record in its entirety, we cannot say that the configuration of the lagoon at the time of the accident posed a substantial risk of injury to *any* foreseeable user of the property exercising due care. Here, the absence of the gangplank and the shallowness of the water between the pier and the float were apparent to all users. The physical characteristics of the facility gave immediate notice to those persons exercising due care that diving from the pier was, in and of itself, a hazardous activity that should be avoided. We think it clear that no member of the public may ignore the notice which the condition itself provides.

■■■ "The 'dangerous condition' of the property should be defined in terms of the manner in which it is foreseeable that the property will be used by persons exercising due care in recognition that *any property can be dangerous if used in a sufficiently abnormal manner.*" (4 Cal. Law Revision Com. Rep. (1963) p. 822, italics added.) Even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons. (*Fuller* v. *State of California, supra,* 51 Cal.App.3d 926, 939.) ■■■ In our case, no reasonable person could conclude that a swimmer, exercising due care and confronted with the notice that the condition itself provided, would have used the pier as a diving platform. The assertion that the placement of guard rails or the posting of warning signs may have been of some value in no way suggests that the absence of such precautionary measures contributed in any way to the creation of the defective or dangerous condition. The danger, if present at all, had to be *obvious* to anyone using the pier. When all the circumstances are considered, the accident occurring here did not result from a "'momentary miscalculation or lapse on the part of the human agent'" (*Curreri* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 603, 612 [69 Cal.Rptr. 20]), against which the City was somehow required to prevent. It simply was not foreseeable that any member of the public would use the facilities in such an abnormal or reckless manner.

■ Contrary to the arguments advanced by plaintiff, this is not a case involving comparative negligence. That doctrine presupposes that there is independent negligence on both sides which is to be compared one to the other. Under the facts at bench and under the definition of dangerous condition as set forth in section 830, there was no negligence on the part of the City. It neither caused the accident nor did it fail to warn plaintiff of some unapparent or inherently unsafe condition. Nothing that defendant did or failed to do was in any way the proximate cause of plaintiff's injuries. The condition of the pier only became dangerous when misused. Thus, the situation is not one which involved comparative negligence but involved the negligence of plaintiff as the sole and proximate cause of the accident and which alone created the dangerous condition. Having used the lagoon on numerous occasions, plaintiff was well aware that the purpose of the pier was to provide access to the float, and was not intended as a diving platform. He also was cognizant of the fact that the structure had been rebuilt without any substantial change from its original design, and that the gangplank had yet to be installed. Despite his familiarity with the area and without even attempting to discern the depth of the water directly beneath the pier, plaintiff executed a flat, right-angled dive in order to avoid hitting bottom or colliding with the float. The very manner in which plaintiff, a trained athlete, positioned himself for the dive clearly established that he recognized the dangers associated with using the pier as a diving platform. His actions were simply not those of a reasonably prudent person exercising due care under the same or similar circumstances.

This is not a case of negligence on the part of the City, which allowed a dangerous condition of public property to exist, being compared to its negligent use by plaintiff. Nor is it the foreseeably negligent user being led into a trap. Plaintiff knew of the condition and he alone created the sole risk of injury. (See Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) pp. 180-181.)

■ Plaintiff nonetheless contends that the City, pursuant to certain regulations contained in the Uniform Building Code (UBC), was under a mandatory duty to erect barricades in the vicinity of the construction site and that its failure to do so entitled him to a jury instruction on negligence per se.

Prior to the conclusion of the trial, plaintiff requested that the following instruction, based on chapter 44, sections 4401 and 4407(c) of the UBC[7] be submitted to the jury: "'No person shall perform any work on any building

---

[7] It is without dispute that the City subscribes to and had adopted those provisions of the UBC at issue here.

or structure, adjacent to a public way in general use by the public for pedestrian travel, unless the pedestrians are protected as specified in this Chapter. . . . . (c) Fences. Fences shall be solid and substantially built, be not less than 8 feet in height above grade, and be placed on the side of the walkway nearest to the building site. Fences shall extend the entire length of the building site and each end shall be returned to the building line. [¶] Openings in such fences shall be protected by doors which normally are kept closed.' [¶] It was the duty of the defendant CITY OF LONG BEACH to comply with the ordinance just read to you. If you find that the defendant failed to comply with such ordinance then it would be subject to liability for an injury proximately caused by its failure to comply with such duty unless you find that the defendant exercised reasonable diligence to discharge such duty."

The trial court apparently refused to give the foregoing instruction on the ground that the City was not bound by the regulations set forth in the code and, in the alternative, that plaintiff was not a member of the class of persons for whose benefit the statute was enacted.[8]

■ Pursuant to Government Code section 815.6,[9] a public entity's failure to comply with a mandatory safety regulation designed to protect a class of persons which includes the plaintiff may, as in analogous private litigation, constitute negligence per se. (See *Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464 [210 Cal.Rptr. 7]; *Cappa* v. *Oscar C. Holmes, Inc.* (1972) 25 Cal.App.3d 978 [102 Cal.Rptr. 207].) In its practical application, the standard for determining whether a mandatory duty exists is virtually identical to the test for an implied statutory duty of care. (*Keech* v. *Berkeley Unified School Dist., supra,* at p. 470.)

Under the doctrine of negligence per se, codified in Evidence Code section 669, violation of a statute without justification constitutes presumptive failure to exercise due care only if the violation proximately caused the injury and the person injured was one of the class of persons for whose benefit the statute was adopted. (See *Hargrave* v. *Winquist* (1982) 134 Cal.App.3d

---

[8]Plaintiff also requested a number of instructions based upon other sections of the UBC, the Health and Safety Code, and the Long Beach Municipal Code. Each such instruction related in some way to plaintiff's argument that the City was under a mandatory duty to erect barricades or post warning signs in the immediate vicinity of the pier. Our discussion of the trial court's refusal to instruct on negligence per se encompasses each of plaintiff's proffered instructions.

[9]Government Code section 815.6 reads as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

916, 925 [185 Cal.Rptr. 30].) ▮▮▮ Whether the injury involved resulted from an occurrence of the nature which the statute was designed to prevent and whether the plaintiff was one of the persons for whose protection the statute was enacted are questions of law. (*Nunneley* v. *Edgar Hotel* (1950) 36 Cal.2d 493, 497-498 [225 P.2d 497]; *Peter W.* v. *San Francisco Unified School Dist.* (1976) 60 Cal.App.3d 814, 822 [131 Cal.Rptr. 854].) Whether the party to an action has violated a statute is generally a question of fact. (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897].) Similarly, the question of whether the violation has proximately caused or contributed to the plaintiff's injury is usually a matter for jury decision. (*Michael R.* v. *Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1066 [205 Cal.Rptr. 312].)

▮▮▮ Although the above discussed principles apply generally to all tort litigation, the threshold question in cases involving a public entity is whether the governmental body was under a mandatory duty to perform a particular act. (See *Bossi* v. *State of California* (1981) 119 Cal.App.3d 313, 319-320 [174 Cal.Rptr. 93].)

Relying on *C. J. Kubach Co.* v. *McGuire* (1926) 199 Cal. 215 [248 P. 676], defendant argues that the UBC does not apply to construction projects undertaken by the city itself. In *Kubach,* the Supreme Court found that the City of Los Angeles was not bound by certain municipal height restrictions in building its city hall. In so concluding, the court reasoned: "In the interpretation of a legislative enactment it is the general rule that the state and its agencies are not bound by general words limiting the rights and interests of its citizens unless such public authorities be included within the limitation expressly or by necessary implication." (*Id.,* at p. 217.)

Although defendant's argument might be applicable under other circumstances, we are not prepared to hold that a municipality may, in all instances, ignore the regulations contained in its own building code especially where such restrictions had been enacted in furtherance of public safety. In any event, we are convinced that the statutes relied upon by plaintiff have no application here and that the trial court properly refused to instruct on negligence per se.

In the instant case, the controlling question is whether the enactments at issue were intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 910, and fn. 6 [136 Cal.Rptr. 251, 559 P.2d 606].) If the injury of the kind sustained by plaintiff was not one of the consequences which the Legislature sought to prevent through imposition of the alleged man-

datory duty, liability does not obtain under Government Code section 815.6. (*Shelton* v. *City of Westminster* (1982) 138 Cal.App.3d 610, 614-621 [188 Cal.Rptr. 205]; *Williams* v. *State of California* (1976) 62 Cal.App.3d 960, 969-971 [133 Cal.Rptr. 539].)

We agree with defendant that the provision of the UBC relied upon by plaintiff were intended to provide protection to pedestrians using a "public way" adjacent to building sites from construction related accidents. Here, the reconstruction of the pier had been substantially completed and any activities that were still ongoing simply did not contribute to plaintiff's accident. The injuries sustained were not of the type that the UBC was enacted to prevent. Nor was plaintiff, in walking onto the pier and intentionally diving from the structure, one of the class of persons for whose protection the regulations were adopted. Under the circumstances, any violation of the UBC that may have occurred imposes no liability under Government Code section 815.6. The trial court did not err in refusing to give the proffered jury instructions.

We have reviewed plaintiff's remaining contentions and found none that warrant further discussion. Plaintiff was entitled to and did in fact receive a fair trial. There was no miscarriage of justice.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.