[No. B110639. Second Dist., Div. Six. Feb. 9, 1998.]

BRIAN SCHONFELDT, a Minor, etc., Plaintiff and Appellant, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

■

■

COUNSEL

Knapp, Petersen & Clarke, David C. Haber, Penny L. Wheat and Cyril Czajkowskyj for Plaintiff and Appellant.

William M. McMillan, Daniel C. Murphy, David N. Sandler and Kenneth G. Nellis for Defendant and Respondent.

OPINION

**GILBERT, J.**—A teenager climbs a freeway fence and runs across the freeway. He is struck by a truck and is seriously injured. This is a use of the freeway without due care in a manner which is not reasonably foreseeable. Therefore, the State of California is not liable for his injury under the California Tort Claims Act.

Gary and Nancy Schonfeldt, as guardians ad litem for their son, Brian Schonfeldt, appeal from the judgment on the pleadings granted to respondent, the State of California. The Schonfeldts contend there are factual questions as to whether four alleged defects surrounding Highway 101 created a dangerous condition funneling Brian to climb a fence and attempt to run across the freeway. We affirm the judgment.

FACTS

Brian and two other boys left their high school one morning, climbed over the freeway fence and ran across the freeway. The other two boys made it across safely, but Brian suffered severe injuries when he was struck by a truck. Brian was 15 years old at the time of the accident and he suffered from attention deficit hyperactivity syndrome (ADHD).

The Schonfeldts filed the instant fourth amended complaint against respondent, the State of California, and others.[1] The Schonfeldts alleged that four defects combined to constitute a dangerous condition of property funneling Brian to run across the freeway: (1) an unlit pedestrian tunnel and

---

[1] The other defendants are the Atascadero Unified School District Matador Lines, Inc.; Truck-A-Way; and Jesus Mendez Rodriguez. None are parties to this appeal.

muddy, narrow pedestrian walkways, (2) a freeway fence four feet, ten inches high instead of recommended height of six feet, (3) a hole in the fence on the other side, and (4) lack of signs warning freeway drivers that pedestrians may illegally attempt to cross the freeway at the instant location.

The trial court granted respondent's motion for judgment on the pleadings, ruling that the allegations of the complaint were insufficient as a matter of law. The trial court granted judgment and this appeal ensued.

### DISCUSSION

■ In reviewing a judgment on the pleadings, we determine whether the complaint states a cause of action and whether the defect can reasonably be cured by amendment. (*Baughman* v. *State of California* (1995) 38 Cal.App.4th 182, 187 [45 Cal.Rptr.2d 82].) If so, the trial court committed reversible error. Otherwise, we affirm. (*Ibid.*) We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We independently construe statutes as a matter of law according to their purpose and intent. (*Ibid.*) If there is no liability as a matter of law, leave to amend should not be granted. (*Ibid.*)

■ A public entity may be liable for injuries caused by a dangerous condition of its property only as provided by statute. (*Thomas* v. *City of Richmond* (1995) 9 Cal.4th 1154, 1157 [40 Cal.Rptr.2d 442, 892 P.2d 1185]; *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809 [205 Cal.Rptr. 842, 685 P.2d 1193].) Section 835 of the Tort Claims Act (Gov. Code, §§ 830-840.6 et seq.)[2] states, in pertinent part: "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [¶] . . . [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . ."

Section 830, subdivision (a) defines "dangerous condition" to mean "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." " '[W]hether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion.' " (*Peterson* v. *San Francisco Community College Dist.*, *supra*, 36 Cal.3d at p. 810.)

---

[2]All statutory references are to this code unless otherwise stated.

"A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 830, p. 299.) "[A]ny property can be dangerous if used in a sufficiently abnormal manner." (4 Cal. Law Revision Com. Rep. (Jan. 1963) p. 822.) A public entity is required only to make its property safe for "reasonably foreseeable careful use." (§ 830; 4 Cal. Law Revision Com. Rep., *supra*, p. 822.)

■ "[A] public entity is only required to provide roads that are safe for reasonably foreseeable *careful* use." (*Chowdhury* v. *City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196 [45 Cal.Rptr.2d 657], italics added; 4 Cal. Law Revision Com. Rep., *supra*, p. 822.) The purpose of freeways is to " 'provide rapid transit for through traffic, uninterrupted by vehicles or pedestrians . . . .' " (See generally *People* ex rel. *Dept. of Transportation* v. *Wilson* (1994) 25 Cal.App.4th 977, 982 [31 Cal.Rptr.2d 52]; Sts. & Hy. Code, §§ 23.5, 100.1, 100.2, 100.3.) Generally, it is illegal for pedestrians to use a freeway. (Veh. Code, § 21960.)

■ Although public entities may be held liable for injuries occurring to reasonably foreseeable users of the property, even when the property is used for a purpose for which it is not designed or which is illegal, liability may ensue only if the property creates a substantial risk of injury when it is used with due care. (See generally *Acosta* v. *County of Los Angeles* (1961) 56 Cal.2d 208, 210-211, 213 [14 Cal.Rptr. 433, 363 P.2d 473, 88 A.L.R.2d 1417]; *Torkelson* v. *City of Redlands* (1961) 198 Cal.App.2d 354, 359-360 [17 Cal.Rptr. 899]; see also Cal. Law Revision Com. com., 32 West's Ann. Gov. Code, *supra*, foll. § 830, p. 299.) Whether a condition creates a substantial risk of harm depends on how the general public would use the property exercising due care, including children who are held to a lower standard of care. (§ 830.) The standard is an objective one; a plaintiff's particular condition, such as ADHD, does not alter the standard.

■ The Schonfeldts cite *Gardner* v. *City of San Jose* (1967) 248 Cal.App.2d 798 [57 Cal.Rptr. 176]. Their reliance on *Gardner* is misplaced. In *Gardner*, a vehicle struck a minor pedestrian crossing a dark, unmarked crosswalk at the intersection of two city streets. The pedestrian subway underneath the street was not illuminated on the evening of the accident, and it was otherwise unsafe. There were no warning or yield-to-pedestrian signs for motorists.

The Court of Appeal upheld judgment for the plaintiff after jury trial in *Gardner*. The situation created a "trap" because both the pedestrian and the

driver had the right-of-way due to the existence of the subway. (*Gardner* v. *City of San Jose, supra,* 248 Cal.App.2d at pp. 803-805; Veh. Code, §§ 21950, 21953.) Here, however, there was no trap nor right-of-way for pedestrians on the freeway. Brian jumped a fence to illegally run across a limited-access freeway which had signs telling drivers that pedestrians are not permitted to be on the freeway. Unfortunately, the consequences of his actions are tragic, but there is no liability here.

The instant situation is more akin to *Mathews* v. *City of Cerritos* (1992) 2 Cal.App.4th 1380 [4 Cal.Rptr.2d 16], *Fredette* v. *City of Long Beach* (1986) 187 Cal.App.3d 122 [231 Cal.Rptr. 598], and *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492 [147 Cal.Rptr. 898]. In *Mathews,* an eight-year-old child became injured riding his bicycle down a very steep, wet and slippery hill in a city park. The Court of Appeal upheld the summary judgment granted to the district. The appellate court explained that liability may not be imposed in *Mathews* because the danger was readily apparent, even to a child exercising a lower standard of due care. (*Mathews* v. *City of Cerritos, supra,* 2 Cal.App.4th at p. 1385, citing *Fredette* v. *City of Long Beach, supra,* 187 Cal.App.3d at pp. 131-132 and *Bartell* v. *Palos Verdes Peninsula Sch. Dist., supra,* 83 Cal.App.3d 492 at p. 500.) This is so even when the public entity, as in *Mathews,* is aware that many children use such property to engage in such activity.

Similarly, in *Fredette,* the appellate court upheld judgment for Long Beach after a child injured himself by diving from a pier into a shallow lagoon. The *Fredette* court explained that "[t]he physical characteristics of the facility gave immediate notice to those persons exercising due care that diving from the pier was, in and of itself, a hazardous activity that should be avoided." (*Fredette* v. *City of Long Beach, supra,* 187 Cal.App.3d at p. 132.)

In *Bartell,* a 12-year-old boy entered a school playground either through an unlocked gate or a hole in the school fence. He died from injuries incurred while playing a dangerous version of "crack the whip" on a skateboard in the playground. The gate and hole were not inherently dangerous even assuming the school district knew that children customarily entered the playground through them to play such games. "The injuries were the direct result of the dangerous conduct of plaintiffs' son and his companion and not of any defective or dangerous condition of the property." (*Bartell* v. *Palos Verdes Peninsula Sch. Dist.,* supra, 83 Cal.App.3d at p. 497.) So it is here.

"[P]ublic entities have no duty, as a matter of law, to prevent members of the public—including young children—from scaling walls and fences

erected for the purpose of keeping them out of areas of relative danger." (*Dominguez* v. *Solano Irrigation Dist.* (1991) 228 Cal.App.3d 1098, 1103-1104 [279 Cal.Rptr. 470].) That the instant fence was slightly shorter than state maintenance manual guidelines suggested does not establish a dangerous condition of the freeway. (Evid. Code, § 669.1; see generally *Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 848-849 [225 Cal.Rptr. 830].) Neither does the lack of warning signs on the freeway, because no concealed trap existed there. (Gov. Code, § 830.8.)

None of the facts alleged here constitute a dangerous condition, either by themselves or in combination. (*Antenor* v. *City of Los Angeles* (1985) 174 Cal.App.3d 477, 484 [220 Cal.Rptr. 181].) Brian chose to do something no reasonable person using due care would do under the circumstances alleged —jump a fence and run across a freeway. The judgment is affirmed.

Costs are awarded to respondent.

Stone (S. J.), P. J., and Yegan, J., concurred.