Filed 10/30/14  Yakoubian v. City of Pasadena CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARAL YAKOUBIAN et al., | B250151 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. GC046386) |
| CITY OF PASADENA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Laura A. Matz, Judge.  Affirmed.

_____

Geragos Law Group and Matthew J. Gerragos for Plaintiffs and Appellants.

Michele Beal Bagneris, City Attorney, Frank L. Rhemrev, Assistant City Attorney, for Defendant and Respondent.

_____

Maral Yakoubian, Bedros Yakoubian, Hovsep Yakoubian and Garbis Bedros Yakoubian (collectively, plaintiffs) appeal from the judgment entered after the trial court granted summary judgment for the City of Pasadena (City) in this action for dangerous condition of public property pursuant to Government Code section 835.[1]  Plaintiffs contend that triable issues of material fact exist as to whether a dangerous condition of public property contributed to the cause of the automobile-pedestrian accident that injured Maral and killed Angele Kazanjian, Maral's mother.  We sympathize with the tragedy of the accident but agree with the grant of summary judgment for the City.  We, therefore, affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.    *The Operative Complaint*

On April 21, 2011, plaintiffs filed the operative first amended complaint against the City alleging a cause of action for dangerous condition of public property pursuant to section 835.[2]  According to the complaint, on November 23, 2009, between 5:00 p.m. and 5:30 p.m., Maral and Angele were crossing the street in a crosswalk at the intersection of Washington Boulevard and Bresee Avenue in Pasadena when they were struck by a 1989 Plymouth Colt driven by Bedikian.  Angele sustained severe head trauma, brain injury, face lacerations and bruises on her legs and ultimately died as the result of her injuries.  Maral sustained lacerations to her lips, bruises to her face, abrasions to her elbow, shins, ankles and knees and back injury, in addition to witnessing the impact of the collision on her mother.  Plaintiffs alleged that the City "failed to properly maintain the [c]rosswalk and failed to place, maintain, and repair appropriate signage, lighting, and striping at, or on, the [c]rosswalk and the adjacent roadway."  "The City had prior notice of these conditions and the attendant danger and risk, as there was a prior accident at the same

---

[1]    Statutory references are to the Government Code unless otherwise specified.

[2]    Plaintiffs collectively alleged one cause of action based on the death of Angele, and Maral alleged a second cause of action based on her injuries.  Plaintiffs also sued Jeanette Lucy Bedikian, the motorist who struck Maral and Angele.  Bedikian no longer is a party to the action.

[c]rosswalk and roadway on December 9, 2003, that resulted in physical injuries and another accident on July 19, 2004[,] which involved a fatality. Despite this prior notice of the dangerous conditions of the [c]rosswalk or roadway, the City failed to make any necessary repairs or improvements to the [c]rosswalk or roadway prior to the [c]ollision."

2. *The Summary Judgment Motion and Opposition*

The City moved for summary judgment, arguing, as relevant, that as a matter of law no dangerous condition of public property caused the accident so as to subject it to liability under section 835. Evidence submitted in support of the motion included the accident report, police photographs taken on the night of the accident and excerpts of deposition testimony from Maral and Bedikian. The City also submitted declarations from a police officer who had investigated the accident, the City's traffic engineer, its engineer responsible for streets and sidewalks, its claims coordinator, and an expert civil and traffic engineer who observed the accident scene once during the day and again on the year anniversary of the accident at the same time of evening as when the accident had occurred. The expert opined that, based on the geometrics of the intersection, the street lighting and signs and markings, "[t]he pedestrian crossing facilities at the intersection . . . on [the date of the accident] were reasonable in order to give adequate warning to drivers of 1) the presence of the eastern crosswalk and 2) the potential that pedestrians may cross Washington Boulevard by means of such crosswalk." The expert also opined that the accident rate at the intersection was less than average given the volume of traffic passing through per day.

Plaintiffs opposed summary judgment, asserting that triable issues of material fact exist as to whether the City's property was a dangerous condition that caused the accident. Plaintiffs maintained that at the time of the accident the crosswalk and "PED XING" markings were faded, the lighting was minimal and a tree partially obscured a sign warning of the crosswalk, all limiting visibility. In addition, plaintiffs claimed that prior accidents at the intersection, as well as the City's evaluation of the intersection, constituted evidence of a dangerous condition. Plaintiffs submitted the expert declaration of a civil and traffic engineer, who faulted the City's expert's conclusions because

3

his visits to the intersection took place after changes had been made to the crosswalk. Plaintiffs' expert opined that, "[w]hile the crosswalk was marked, the painted lines were well worn and not maintained. The advanced pavement markings, 'PED XING,' were well worn and not maintained. The street lighting was minimal. A tree partially obstructed the reflective yellow sign indicating the crosswalk. The crosswalk was difficult for motorists approaching the intersection to see even in the daylight." The expert also opined that, due to limited visibility, the crosswalk did not meet California's or the City's standards for pedestrian safety.

3.    *The Trial Court's Ruling*

The trial court granted summary judgment for the City. According to the court, "[t]he City has demonstrated that plaintiffs will be unable to establish there was a dangerous condition of public property. [Citation.] Plaintiffs contend the alleged faded condition of the crosswalk markings and 'PED XING' street markings and the obstruction of a pedestrian warning sign by tree limbs constitute a dangerous physical condition of public property. This contention is equivalent, in essence, to an argument the City failed to provide signals, signs or markings. Under . . . section 830.8, however, '[n]either a public entity nor a public employee is liable . . . for an injury caused by the failure to provide traffic or warning signals, signs or markings or devices . . . [unless] . . . a signal, sign, marking or device (other than one described in [s]ection 830.4) was necessary to warn of a dangerous condition[,] which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.' . . . Plaintiffs fail to identify, and there is no evidence of, some other dangerous condition not readily apparent[,] which the subject crosswalk or sign w[as] necessary to warn of, such that the exception to non-liability set forth in section 830.8 is implicated. Plaintiffs' arguments that in-road lighting, or other lighting or other measures not presently existing at the intersection would make the intersection safer is not relevant both because the issue is whether the intersection in its physical condition at the time of the accident was in a dangerous condition, not whether it

4

could be made safer, and because those items are not required by the City . . . . [Citation.]"

The trial court continued, "Even if [s]ections 830.4 and 830.8 were inapplicable, it appears to the court from the photographs taken at the scene immediately after the accident that the yellow pedestrian sign on the lamp post standard was not blocked by the nearby tree and was visible without obstruction by anyone traveling in the number one lane, as [Bedikian] was, at the time of the accident. It also appears to the court that the crosswalk and 'PED XING' signs on the roadway, though somewhat faded in the center of the road, were not so faded that they could not reasonably be seen. There is no evidence offered to establish that the three prior incidents at this intersection referred to by plaintiffs were similar to this incident such that their occurrence would establish this intersection constituted a dangerous condition. In fact, two of those incidents occurred before changes were made to this crosswalk. Under these circumstances, the court finds that the risk created by the claimed deficiencies of the crosswalk were of such a minor, trivial or insignificant nature that no reasonable person would conclude that the condition of the crosswalk created a substantial risk of injury."

The trial court entered judgment for the City. Plaintiffs timely appealed.

## DISCUSSION

1. *Standard of Review*

A trial court must grant a summary judgment motion when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We independently review the trial court's decision, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of

5

material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

2.      *Summary Judgment Was Proper*

      a.      *Liability requirements for a dangerous condition of public property*

A public entity is not liable for an injury arising out of its act or omission except as provided by statute. (§ 815, subd. (a).) Section 835 is the sole statutory basis for imposing liability on a public entity for the condition of its property. (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347 (*Cerna*).) Under that statute, "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under [s]ection 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.)

A "'dangerous condition'" is "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830.) "A plaintiff's allegations, and ultimately the evidence, must establish a *physical* deficiency in the property itself. [Citations.] A dangerous condition exists when public property 'is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users. [Citation.]" (*Cerna*, *supra*, 161 Cal.App.4th at pp. 1347-1348.)

With respect to traffic control signals or signs, "[a] condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction

6

signs, as described by the Vehicle Code, or distinctive roadway markings as described in [s]ection 21460 of the Vehicle Code." (§ 830.4) In addition, "neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code." (§ 830.8.) Nevertheless, "a public entity or public employee [is not exonerated] from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in [s]ection 830.4) was necessary to warn of a dangerous condition[,] which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." (*Ibid*.) As a result, "a concealed dangerous condition that is a trap to motorists or pedestrians may require the posting of a warning sign but the absence of a warning sign itself is not a dangerous condition. [Citations.]" (*Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 136 (*Mixon*).)

"A public entity may be liable for a dangerous condition of public property even where the immediate cause of a plaintiff's injury is a third party's negligence if some physical characteristic of the property exposes its users to increased danger from third party negligence. [Citation.] 'But it is insufficient to show only harmful third party conduct, like the conduct of a motorist. "'[T]hird party conduct, by itself, unrelated to the condition of the property, does not constitute a "dangerous condition" for which a public entity may be held liable.'" [Citation.] There must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff. [Citation.]' [Citation.]" (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1069-1070 (*Salas*).) "'[P]ublic liability lies under . . . section 835 only when a feature of the public property has "increased or intensified" the danger to users from third party conduct.' [Citation]." (*Cerna*, *supra*, 161 Cal.App.4th at p. 1348.) "With respect to public streets, courts have observed 'any property can be dangerous if used in a sufficiently improper manner. For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use. [Citation.] "If [] it can be shown that the property is safe when used with

7

due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous'"'" under the statutory definition. (*Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1183 (*Sun*).)

"The existence of a dangerous condition is ordinarily a question of fact but 'can be decided as a matter of law if reasonable minds can come to only one conclusion.' [Citation.]" (*Cerna*, *supra*, 161 Cal.App.4th at p. 1347.) In that regard, "[a] condition is not . . . dangerous . . . if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.) This provision, while "'[t]echnically . . . unnecessary,'" "'emphasize[s] that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous.' [Citation.]" (*Salas*, *supra*, 198 Cal.App.4th at p. 1069, fn. 4.)

  b. *No dangerous condition as a matter of law*

Plaintiffs contend that the trial court erred by granting summary judgment on the ground of no dangerous condition as a matter of law because triable issues of material fact exist based on a combination of faded crosswalk and PED XING markings, a tree near one of the crosswalk signs and inadequate lighting at the intersection, as well as a prior history of accidents at and the City's evaluation of the intersection. We disagree.

According to the undisputed facts, on the evening of November 23, 2009, about 5:20 p.m., Maral and Angele prepared to cross Washington Boulevard at Bresee Avenue in Pasadena. Washington Boulevard, a directionally straight roadway with flat terrain, runs east-west with a speed limit of 35 miles per hour. The traffic is divided by painted double yellow lines. Breese Avenue runs north-south with one traffic lane in each direction. A painted 14-foot-wide crosswalk spans Washington Boulevard at Bresee

8

Avenue. The words "PED XING" are painted on Washington Boulevard approximately 250 feet before Bresse Avenue. The sidewalk on Washington Boulevard has "bump outs" at the location of the crosswalk. Yellow, metal, pedestrian-crossing signs are located on both the north and south sides of the crosswalk. Streetlights occupy each of the intersection's corners, and decorative lighting is present as well. Maral and Angele entered the crosswalk at the northeast corner of the intersection and proceeded south across Washington Boulevard. Maral saw a car approaching from far before she stepped into the crosswalk but expected the motorist to stop. Maral and Angele were struck by Bedikian as she was driving east on Washington Boulevard in the number one traffic lane, the lane closest to the middle of the intersection. Bedikian resides near the intersection and drove through it many times before the accident. Yet, on the evening of the accident, with the headlights of her car on, she did not see the "PED XING" marking as she approached the intersection, nor crosswalk or the crosswalk signs. She did not see Maral or Angele until she hit them and cannot explain why. Bedikian has macular degeneration in one or both eyes. These undisputed facts do not demonstrate a dangerous condition of public property as a matter of law.

According to plaintiffs' expert, the City created a dangerous condition because the crosswalk and "PED XING" markings were faded, a tree obstructed a crosswalk sign and the lighting was minimal. Although "a dangerous condition of public property may be based on a combination of factors" (*Mixon*, *supra*, 207 Cal.App.4th at p. 137), even assuming the conditions identified by the expert existed, they do not create a triable issue of material fact as to statutory liability for a dangerous condition of public property.

Regarding the faded markings and the tree obstructing the crosswalk sign, the absence of markings or signs cannot create a dangerous condition of public property. A dangerous condition in the form of a physical defect that causes a substantial risk of injury even when the property is used with due care may require markings or signage. But the lack of markings or signs is not a dangerous condition. (§ 830.8; *Mixon*, *supra*, 207 Cal.App.4th at p. 136 ["a concealed dangerous condition that is a trap to motorists or pedestrians may require the posting of a warning sign but the absence of a warning sign

9

itself is not a dangerous condition]".) For example, in *Sun*, *supra*, 166 Cal.App.4th 1177, summary judgment was properly granted for the public entity in a case based on the death of a pedestrian crossing the street and struck by a motorist when the purported dangerous condition was that the public entity had failed to repaint crosswalk markings at an intersection that once had markings. (*Id*. at pp. 1192-1193.) According to the appellate court, "[t]o the extent [plaintiffs'] expert opined that the absence of the crosswalk markings created a 'trap' for pedestrians, that claim is foreclosed by section 830.8[,] which immunizes a public entity for liability for accidents proximately caused by its failure to provide a signal, sign, marking, or device to warn of a dangerous condition [that] endangers the safe movement of traffic unless that condition 'would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.' 'This "concealed trap" statute applies to accidents proximately caused when, for example, the public entity fails to post signs warning of a sharp or poorly banked curve ahead on its road or of a hidden intersection behind a promontory [citations], or where a design defect in the roadway causes moisture to freeze and create an icy road surface, a fact known to the public entity but not to unsuspecting motorists [citation], or where road work is being performed on a highway [citation].' [Citation.]" (*Id*. at p. 1193.) No such condition has been identified here.

As to the minimal lighting, the undisputed evidence reveals that the intersection had streetlights at each of its corners, as well as decorative lighting. In any case, "[a] public entity is under no duty to light its streets. . . . [A] prior dangerous condition may require street lighting or other means to lessen the danger but the absence of street lighting is itself not a dangerous condition." (*Mixon*, *supra*, 207 Cal.App.4th at p. 133.) Along the same lines, a public entity is not liable for failing to provide brighter lights. (*Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 483 [directed verdict proper for city in action by pedestrians struck by motorist because, among other reasons, city had no duty "to light its streets in the first instance" and thus could not be liable for failing to provide brighter lights, even when light intensity at intersection was below governmental standards].)

10

Plaintiffs have not identified any physical defect in the intersection that rendered it unsafe even when used with due care.  (See *Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 440-441 [demurrer properly sustained to complaint alleging dangerous condition of public property because no allegation that intersection where motorist hit pedestrian "had blind corners, obscured sightlines, elevation variances, or any other unusual condition that made the road unsafe when used by motorists and pedestrians exercising due care"]; see also *Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 132 (*Fredette*) [cases in which public entity held liable "the inability of any user to see or appreciate the danger remained a constant feature of the property whether used by careless or careful persons," such as a deceptively sharp curve with an elevation change].)  The conditions cited by plaintiffs' expert, therefore, do not overcome summary judgment.

Plaintiffs also claim three prior accidents at the intersection demonstrate a dangerous condition of public property.  "While there must be substantial similarity to offer other accident evidence for any purpose, a stricter degree of substantial similarity is required when other accident evidence is offered to show a dangerous condition; '"the other accident must be connected in some way with that thing . . . ."'  [Citation.]"  (*Salas*, *supra*, 198 Cal.App.4th at p. 1072.)  Plaintiffs, however, fail to connect any of the prior accidents on which they rely with any "thing" suggesting a physical defect in the property constituted a dangerous condition.  (See *Sun*, *supra*, 166 Cal.App.4th at pp. 1187-1188 [prior accidents do not show dangerous condition when not connected to alleged physical defect claimed by plaintiffs to render the intersection dangerous with regard to automobile-pedestrian accident]; *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 234 [evidence relevant if it shows that "'other persons have been injured on this same defect'"].)

Plaintiffs also rely on the City's failure to repaint the crosswalk markings according to a certain schedule and on its identification of the intersection as one that could be made safer.  As to the markings, the City had no duty to create them so it cannot be liable for failing to repaint them sooner.  "'According to the . . . [V]ehicle [C]ode,

11

there is a legal crosswalk at every intersection whether it is marked or not." (*Sun*, *supra*, 166 Cal.App.4th at p. 1191.) Thus, the City's failure to follow its proposed repainting schedule does not create a dangerous condition. (See *id*. at pp. 1191-1192 [public entity's failure to comply with Vehicle Code provision requiring notice of removal of marked crosswalk does not create liability for dangerous condition of public property].) Nor does the City's recognition of a potential to increase public safety by implementing additional precautionary measures prove the condition at the time of the accident was statutorily dangerous. (*Fredette*, *supra*, 187 Cal.App.3d at p. 132.) The potential that public property in its original design could have been made safer is irrelevant; "'liability is not to be fastened upon a municipality merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means.'" (*Dole Citrus v. State of California* (1997) 60 Cal.App.4th 486, 494.) Although the accident at issue is tragic, liability for a dangerous condition of public property does not exist.[3]

## DISPOSITION

The judgment is affirmed. The City is entitled to its costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

JOHNSON, J.

---

[3] Based on our decision that no dangerous condition exists as a matter of law, we need not reach the issue of the City's design immunity.

12