Filed 12/13/22  Reynolds v. Board of Trustees of the Cal. State University CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KATHERINE REYNOLDS, | B315543 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV13567) |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

Vaziri Law Group, Matthew M. Taylor and Karan S. Gill for Plaintiff and Appellant.

Rob Bonta, Attorney General, Danielle F. O'Bannon, Assistant Attorney General, David Adida and Ezra D. Siegel, Deputy Attorneys General, for Defendant and Respondent.

Katherine Reynolds appeals the grant of a motion for summary judgment on her complaint alleging a dangerous condition of public property against the Board of Trustees of The California State University[1] (CSU).  Reynolds contends the trial court erred because it based its decision upon an issue not raised in CSU's moving papers, and because there were triable issues of material fact as to whether the area where Reynolds was injured constituted a dangerous condition.  We find no error and therefore affirm the judgment.

## BACKGROUND

### I.      Underlying facts

In April 2020, Reynolds filed a complaint against CSU alleging general negligence and a dangerous condition of public property (Gov. Code, § 835).[2]  Reynolds alleged that, on October 12, 2019, she fell on a negligently owned, maintained, and operated pedestrian walkway at CSU's campus in Pomona, California, sustaining severe and permanent injuries.

The incident occurred when Reynolds, accompanied by four children, went to visit the annual Pumpkin Patch Festival on the Cal Poly Pomona campus.  The festival is a carnival-type event with a 27-year history, hosted on a large field at the agricultural school, surrounded by a white fence.  Between 6,000 and 8,000 people visited the festival on the day of Reynolds's accident, but CSU planned for as many as 10,000 daily visitors.

---

[1] The Board of Trustees of The California State University was erroneously sued as The California State University.

[2] All undesignated statutory references that follow are to the Government Code.

2

Reynolds drove to the festival in her husband's car, which had a handicap placard. Festival employees directed her to park in the parking lot designated for persons with disabilities, which was located on the opposite side of the field from the festival entrance. A shuttle from that lot to the festival entrance was available, but Reynolds declined to use it because she believed the shuttle would not accommodate the wagon they had brought to carry pumpkins, although she did not inquire specifically.

CSU's plans and procedures required pedestrian traffic to be directed toward the entrance. According to Reynolds, however, she received no instruction from staff and, following 10 or 15 other pedestrians, decided to take a " 'short cut' " around the field in the opposite direction, down a closed road and past a digital message board indicating the road was closed and there was no access to the festival that way. The signs did not specifically state that pedestrians could not utilize the road.

The roadway had no sidewalk and was bordered only by a strip of dirt and the white fence. Reynolds, wearing flip-flop sandals, described that she followed other pedestrians along the road—including a mother with a stroller and a woman carrying her baby—until the white fence ended. She then turned down an unpaved embankment, perpendicular to the road and separating the crowd from the festival entrance, that was made up of loose dirt and rocks. Nothing obstructed Reynolds's view of the embankment; her vision was "good" and the day was "bright and sunny." No signs designated the embankment as a pathway, walkway, trail, or entrance to the festival or the adjacent farm store.

Concerned that the children would lose control of the wagon, Reynolds directed them to carry the wagon down the dirt

embankment.  Because others were continuing down the embankment, Reynolds did not think twice about doing so as well.  As she stepped down, she was not in a rush.  She reached toward the adjacent fence for balance but was unable to touch it before her left foot slipped forward while her right leg bent under her and she fell to the ground.  She immediately laughed because the children looked scared, but she had seriously injured her ankle.[3]

Later, a CSU claims examiner searched a database containing all bodily injury claims that occurred at Cal Poly Pomona's campus since July 1, 2010, and found no records of a prior fall at that location.  A campus police supervisor searched a database of police reports dating to January 2012 and found no records of a medical assist for a trip and fall incident within a mile of the embankment area  The festival's director, who had held that role since 2015, similarly had no record or recollection of a fall or other accident in the area where Reynolds fell.

## II.     The summary judgment motion

In May 2021, CSU moved for summary judgment, arguing that natural condition immunity and trail immunity rendered it immune from suit, it had no notice of any dangerous condition, and Reynolds's failure to exercise due care prevented her from showing the condition posed a substantial risk of injury.  Specifically, CSU argued that any person exercising due care would have observed the steepness of the embankment and the absence of a sign designating it as a path, and would have declined to navigate it in flip-flops.

---

[3] Although Reynolds told police that her sandal broke as she was walking down the hillside, causing her to slip, Reynolds insisted in her deposition that her sandal did not break.

4

Reynolds filed an opposition, specifically arguing, among other things, that triable issues of fact existed as to whether she "exercised due care and used the area in a foreseeable manner." Reynolds contended that it was foreseeable that pedestrians would have attempted to take the shortest route to the entrance,[4] that, as Californians in October, they would be wearing flip-flops, that they would decline the free shuttle if they had wagons, and that they would ignore a no-access sign because the sign did not specifically mention pedestrians.

CSU filed a reply brief, arguing, among other things, that pedestrians utilizing the embankment was not foreseeable because: (1) Reynolds admitted to never having inquired into whether she could carry her wagon on the free shuttle, and, even if she could not do so, it was not foreseeable that the public would walk down a closed road and onto an unimproved slope when the designated entrance was within walking distance; (2) the hypothetical existence of a shorter route did not mean its use was foreseeable; and (3) the "road closed" sign could not reasonably be interpreted as open to pedestrians. Further, even if using the slope as a walking path was foreseeable, it was not consistent with exercising due care, as required for dangerous condition liability.

In August 2021, the trial court issued a tentative ruling granting CSU's motion, concluding that Reynolds had not met her burden to show triable issues of material fact existed because

---

[4] In support of this argument, Reynolds attached a declaration from a forensic engineer who reviewed Google Earth aerial view measurements and determined that the shortest path of travel from the parking lot to the entrance of the festival was through the "steeply sloped" embankment.

the alleged dangerous condition was "open and obvious to any reasonable person exercising due care." This was especially the case where Reynolds admitted that there were no signs directing her to the festival via the embankment, she was concerned about the children accompanying her descending the embankment, she could have used the wooden fence as a handrail, and she was wearing flip-flops as she descended. The court also cited the photographs of the slope and the testimony of Reynolds's expert that the embankment was "steeply sloped" as further evidence of the obviousness of the purportedly dangerous condition. Given the obvious nature of the alleged condition, the court reasoned, any person "could reasonably be expected to see it" and therefore there was no evidence of "foreseeability of harm." The court elaborated: *In other words . . .* no reasonable person would conclude that the subject property created a substantial risk of harm to users who would use the subject property with the due care that is expected."

At oral argument, Reynolds reasserted the arguments in her moving papers, arguing, among other things, that because others were utilizing the embankment, there was a jury question as to whether the embankment created a substantial risk of harm to those utilizing the condition with due care. When Reynolds argued that CSU's position that the "condition was not so obvious so as to trigger constructive notice" was inconsistent with the court's tentative ruling, the trial court pointed out that she was "conflating . . . notice and what is open and obvious to a reasonable person," which were two separate issues.

Finally, Reynolds suggested that the trial court had based its tentative ruling on an argument—that is, whether the dangerous condition was "open and obvious"—that CSU had

never "specifically tendered" and requested further briefing.  The trial court responded that the issue had been "fully briefed," referencing specific pages of CSU's moving papers and that its tentative ruling had relied on the same cases.  The trial court adopted its tentative ruling, and Reynolds timely appealed.

## DISCUSSION

### I. Standard of Review

The applicable standard of review of a ruling on a motion for summary judgment is well established.  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850; see Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citation.]" (*Aguilar*, at p. 853.)  A defendant meets its burden by presenting affirmative evidence that negates an essential element of a plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim (*Aguilar*, at p. 854), or that "there is a complete defense to that cause of action." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 997).

7

On appeal from a summary judgment ruling, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.) Because a decision to permit a continuance to present additional facts or law in opposition to a motion is discretionary (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 73), we review such a determination for an abuse of discretion. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72.)

"In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*) Thus, a reviewing court "will affirm a summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1402 (*Angelotti*).)

**II. The trial court did not abuse its discretion in granting summary judgment without affording Reynolds an opportunity to address issues not raised in the moving papers**

We begin with Reynolds's contention that the trial court improperly granted summary judgment on an issue not raised in CSU's moving papers. This contention is contrary to the record. The theory upon which the trial court granted summary judgment was the subject of extensive litigation both in the written briefing and at oral argument. Therefore, the trial court did not abuse its discretion in granting CSU's motion without permitting further briefing or argument.

As described above, the trial court granted summary judgment on the ground that the subject property was not a "dangerous condition." The court reasoned that because the alleged dangerous condition was "open and obvious . . . . no reasonable person would conclude that [it] created a substantial risk of harm to users who would use [it] with the due care that is expected." In other words, "foreseeability of harm" was "absent" under the facts presented.

Whether the embankment was a "dangerous condition" was an unmistakably central area of contention between the parties throughout the summary judgment proceedings. In its holding, the trial court cited the precise cases and language that CSU had invoked in its moving papers. Reynolds's opposition addressed the issue specifically, alleging several specific reasons that triable issues of fact existed as to whether she "exercised due care and used the area in a foreseeable manner." CSU's reply brief further elaborated on this theory, dissecting each of the reasons that Reynolds's opposition identified as a basis for trial on this issue.

9

The court then issued a tentative ruling indicating it would grant the motion on this precise basis, pointing directly to the portion of CSU's moving papers raising this argument.

Although Reynolds's counsel claimed at oral argument that the trial court was ruling on an unbriefed issue and asked for a continuance, he never indicated what points he would make that he had not already addressed.[5]  That counsel's oral argument referenced cases and facts relevant to the precise issue upon which the trial court ruled underscored that he was amply prepared to address the issue.  Therefore, as Reynolds's appellate briefs elsewhere acknowledge, she had ample notice and opportunity to litigate the precise basis for the trial court's summary judgment ruling.[6]

---

[5] Reynolds primarily takes issue with a single line in the trial court's decision declaring that CSU had argued that the dangerous condition was "open and obvious."  Though Reynolds is correct that CSU's briefing did not deploy the precise phrasing "open and obvious," she also acknowledges that the trial court, in the next sentence of its order, restated the contention as denying liability for injuries resulting from dangers that were obvious or " 'could have been observed had [Reynolds] exercised ordinary care.' "  The trial court was therefore at all times ruling on one singular issue, which the parties had exhaustively briefed. (*Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 132 (*Fredette*) [no dangerous condition because danger, if any, was "*obvious* to anyone using" facility].)  We therefore reject Reynolds's contentions regarding the trial court's phrasing as overly formalistic.

[6] We disagree with Reynolds's assertion that this portion of CSU's motion was actually directed toward Reynolds's contributory negligence, a legally distinct defense to a section 835

Even accepting Reynolds's assertion that the trial court ruled on an unbriefed issue, Reynolds does not proffer what additional argument she would have raised had she been afforded the opportunity to do so. As we address in the section that follows, her appellate attacks on the merits of the trial court's decision are no more persuasive than her arguments below. Therefore, we are unconvinced that any additional argument would have altered the outcome. (*Angelotti, supra*, 192 Cal.App.4th at p. 1402; see *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347 [appellant's burden to demonstrate prejudicial error]; see also Cal. Const., art. VI, § 13; Code Civ. Proc., § 475 ["No judgment, decision or decree shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial . . . and that a different result would have been probable if such error . . . had not occurred or existed."].)

Taking these circumstances together, the trial court did not abuse its discretion in ruling on the motion and denying counsel's request for a continuance.

III. **Summary judgment was appropriate because no trier of fact could reasonably conclude the embankment created a substantial risk of injury when used with due care in a foreseeable manner**

A public entity is generally not liable for any injury, whether arising out of an act or omission of the entity or employee or any other person, except as provided by statute.

---

action that CSU did not raise. (See *Mathews v. City of Cerritos* (1992) 2 Cal.App.4th 1380, 1384 (*Mathews*) [contributory negligence is "defense" distinct from reasonably foreseeable use with due care].)

11

(§ 815, subd. (a); *Williams v. Horvath* (1976) 16 Cal.3d 834, 838.)[7] Under section 835, a public entity is liable for injuries caused by a dangerous condition of its property or its failure to warn of a dangerous condition on or near its property, provided that a plaintiff can show, by a preponderance of the evidence, that the injuries were "proximately caused by the dangerous condition, [and] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred." (*Harland v. State of California* (1977) 75 Cal.App.3d 475, 483.)[8]

Section 830, subdivision (a) defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury

---

[7] Although the trial court did not separately analyze whether summary judgment was appropriate as to Reynolds's general negligence cause of action, that claim unmistakably failed because it did not allege a statutory basis. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899–900.) As Reynolds raises no arguments with respect to it, we need not address it further.

[8] Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

when such property or adjacent property is used with due care in the manner in which it is reasonably foreseeable that it will be used."  "Any property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use." (*Mathews, supra,* 2 Cal.App.4th at p. 1384.)  "Whether property is in a dangerous condition often presents a question of fact, but summary judgment is appropriate if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines that no reasonable person would conclude the condition created a substantial risk of injury when such property is used with due care in a manner which is reasonably foreseeable that it would be used." (*Id.* at p. 1382; see *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 [summary judgment inappropriate where reasonable minds can differ as to existence of dangerous condition].)  Assessing this question requires consideration of a totality of the circumstances including, but not limited to: the intrinsic nature and quality of the defect, any circumstances surrounding the accident that might have caused the defect to be more dangerous than usual (e.g., the time of day and lighting), and whether there is evidence of any prior injuries from the same defect. (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734.)

Here, no trier of fact could reasonably conclude the embankment was a dangerous condition—that is, that it created a substantial risk of injury when used with due care in a foreseeable manner.  The undisputed facts showed that the embankment was a steep dirt slope, neither designed nor in any way advertised as a walkway, that Reynolds reached by walking down a road clearly marked as closed to festival-goers, instead of

utilizing the free shuttle available to her.  Moreover, Reynolds admitted to clearly observing the dangerous condition of the slope and being "concerned" about it before choosing to take the risk of navigating it in flip-flops and without utilizing the adjacent wooden fence to brace herself.[9]

Thus, both the self-apparent nature of the alleged danger and Reynolds's choices in the face of that danger were, in their totality, fatal to her dangerous condition claim.  (See *Fredette*, *supra*, 187 Cal.App.3d at p. 132 [no "dangerous condition" where "physical characteristics" made danger "apparent to all users"]; *Mathews*, *supra*, 2 Cal.App.4th at pp. 1384–1385 [reaching similar conclusion, even as to child held to lower standard of care, as to descending steep hill]; see also *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701 [plaintiff's conscious choice to bypass obviously safer route is not employing due care];[10] *Biscotti v. Yuba City Unified School Dist.* (2007) 158 Cal.App.4th 554, 559 [not "foreseeable" that plaintiff exercising due care would climb fence to get to other side].)[11]  The lack of prior incidents at the

---

[9] Reynolds's argument that her statements only suggested concern for the children accompanying her did not render the condition any less obvious.

[10] Reynolds's attempt to distinguish *Davis v. City of Pasadena, supra,* 42 Cal.App.4th 70, as a case where plaintiff declined to utilize an available alternative *handrail*, as opposed to the *fence* at issue here is not convincing.  In our view, the substance of the safer alternative is of marginal relevance compared to its availability in the first place.

[11] Our reference to Reynolds's circumstances is not intended to suggest her particular lack of due care plays any role in our analysis.  After all, "the fact the particular plaintiff may

site, despite its long history of well-attended events, only buttresses that conclusion. (*Fielder v. City of Glendale, supra*, 71 Cal.App.3d at p. 734.)

Reynolds's further arguments suggesting otherwise are unavailing. For example, she suggests that because other pedestrians, including a mother with a stroller, were utilizing the embankment to attend the festival without incident, and that the embankment was the shortest path of travel, the dangerous condition was "less obvious." Even crediting that Reynolds took the shortest possible "route" to the festival with the crowd she described, this does not bear upon our conclusion that the users of the route, however many there were, were not exercising due care. The record is clear that the alleged group of 10 to 15 people disregarded signs indicating the road, which had no apparent pedestrian path, was closed, then proceeded down a steep dirt embankment.

To the extent that Reynolds contends she was induced to use the embankment as a walking path because the road closure sign did not expressly prohibit pedestrians from doing so, we do not share that view. In *Morin v. County of Los Angeles* (1989) 215 Cal.App.3d 184, another division of this court was faced with a similar argument regarding a sign on a pier that warned against "swimming within 200 feet thereof." (*Id.* at p. 193.) The court rejected the argument, reasoning that the sign's placement

---

not have used due care is relevant only to his comparative fault and not to the issue of the presence of a dangerous condition." (*Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 992.) Thus, we summarize her testimony only in connection with assessing "the risk [the condition] posed to an ordinary foreseeable user." (*Ibid.*)

did not encourage a "reasonable person" to swim 300 feet from the pier, as plaintiff had done when he encountered the alleged dangerous condition. (*Id.* at p. 194.) Similarly, the closure signs at issue here could not reasonably be construed as inviting pedestrians to utilize the road to walk to the festival's entrance, especially where a free shuttle was available from the lot where Reynolds parked. Certainly, able counsel with the benefit of hindsight could readily devise a contrary reading of the signage, but that is not the metric that section 830, subdivision (a) requires us to apply.

In sum, given Reynolds's choices despite the obvious risks associated with the alleged condition, no reasonable factfinder could have concluded that the embankment was a "dangerous condition." (*Fredette*, *supra*, 187 Cal.App.3d at p. 132.) That is, no trier of fact could reasonably conclude the alleged condition created a substantial risk of injury when used with due care in a reasonably foreseeable manner. (*Mathews*, *supra*, 2 Cal.App.4th at p. 1382.)[12] The trial court properly granted summary

---

[12] Despite Reynolds's counterarguments, CSU's assertion that the embankment was not a dangerous condition because it was "obvious" is not in tension with its contention that it did not have actual or constructive notice of the alleged condition. The argument that a condition was known or was otherwise so "obvious" that the public entity should have discovered its dangerousness—as required for actual or constructive notice (§ 835.2)—is plainly distinct from the argument that a condition is not "dangerous" because the alleged danger was so "obvious" that no reasonable person can "ignore the notice which the condition itself provides." (*Fredette*, *supra*, 187 Cal.App.3d at p. 132.) As the trial court correctly noted, these are discrete elements, one concerning the *public entity's* awareness of the

judgment to CSU. In light of this disposition, we need not address the alternative bases that CSU advances for upholding the trial court's summary judgment ruling. (*Angelotti, supra,* 192 Cal.App.4th at p. 1402.)

---

dangerous character of a latent condition, and the other involving whether a *foreseeable user* exercising due care might fail to anticipate the danger. (*Id.* at pp. 131–132 [constructive notice has "no application" where condition is so obvious it is not "dangerous"]; see *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 289 [dangerous condition analysis "interwoven" with—but distinct from—notice analysis].) The latter is a threshold question to the former, but each inquiry serves a distinct purpose in narrowing governmental liability. (See *Fredette,* at p. 132 [definition of "dangerous condition" recognizes that entity owes no obligation to protect individuals failing to exercise public property without care, even if such users are foreseeable]; *Drummond v. Redondo Beach* (1967) 255 Cal.App.2d 715, 720 [municipality's knowledge of not just condition, but of its dangerousness, is essential to avoid "render[ing] [them] an insurer against accidents"].)

**DISPOSITION**

The judgment is affirmed. Board of Trustees of the California State University is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

18